**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>CAESARS ENTERTAINMENT<br>OPERATING COMPANY, INC., *et al.*,<br>　　　　　　　　　*Debtors*. | **Case No. 15-cv-06504**<br><br>Hon. Robert W. Gettleman |
| CAESARS ENTERTAINMENT<br>OPERATING COMPANY, INC., *et al.*,<br>　　　　　　　　　*Appellants*,<br>　　　　　　*v.*<br>BOKF, N.A., *et al*.<br>　　　　　　　　　*Appellees*. | *On appeal from*:<br><br>Bankruptcy Case No 15-01145 (ABG)<br><br>Adversary Pro. No. 15-00149 (ABG) |

**OBJECTION OF APPELLEES WSFS AND BOKF**
**TO MOTION TO EXPEDITE APPEAL**

　　　Appellees Wilmington Saving Fund Society, FSB ("<u>WSFS</u>"), and BOKF, N.A. ("<u>BOKF</u>"

and, collectively, the "<u>Trustees</u>") object to the Appellant-Debtors' *Motion To Expedite Appeal*

(ECF 6) as follows:

**I.　　PRELIMINARY STATEMENT**

　　　According to the Debtors, they "find themselves in a race to judgment that the

Bankruptcy Code is supposed to prevent, and are now forced to seek expedited relief from this

Court." Mot. at 1. Not so. This appeal follows protracted litigation that played out before the

Bankruptcy Court over the last five months, and the Motion is made only after the Bankruptcy

Court denied certification of a direct appeal to the Seventh Circuit. Any "urgency" the Debtors

feel is the product of their own strategic choices in waiting two months after the bankruptcy

petition date to file their case and another two months for trial on the merits. The Trustees and

other appellees (collectively, the <u>Appellees</u>") should not be prejudiced by decisions the Debtors

apparently regret now that they have failed to achieve the relief sought.

In the adversary proceeding below, the Debtors attempted to obtain extraordinary relief, asking the Bankruptcy Court to enjoin another United States District Court and the Delaware Chancery Court from deciding actions, pending against a non-debtor, that properly were before those tribunals for months before the bankruptcy cases even began. It was not until early March, two months into their bankruptcy case, that the Debtors requested an injunction against prosecution of four separate actions pending against their corporate parent, Caesars Entertainment Corporation ("CEC"), which is not a debtor in bankruptcy (and thus not sheltered by the automatic stay). Three of those cases are before the District Court for the Southern District of New York, and one is before the Delaware Chancery Court; all but one had been filed months before the date of bankruptcy. In them, four unrelated groups of plaintiffs seek to enforce CEC's contractual guarantee of more than $4.5 billion of debt.

In late July, following a two-day trial with testimony from four witnesses and approximately 150 exhibits, the Bankruptcy Court issued a 33-page opinion denying the Debtors' requested injunction. **Ex. A** ("Op.").[1] Now, after waiting two months to seek an injunction and then declining the Bankruptcy Court's offer to conduct an expedited trial in late March, the Debtors profess newfound urgency, asking this Court to rush their appeal. In particular, they ask that the Court shorten the period in which the four Appellees may file their answering briefs, to a mere *seven* days from the *thirty* days provided by the Federal Rules of Bankruptcy Procedure. Mot. at 6-7.

That request is at once procedurally deficient, highly prejudicial, and ultimately futile, as an expedited appeal will not prevent the alleged harm the Debtors say they want to avoid. Procedurally, the Debtors have ignored Bankruptcy Rule 8013, which requires that a party

---

[1] The Opinion and related transcript excerpts and other record material cited in this Objection are attached as Exhibits as indicated.

seeking "expedited action on a motion" – including a "motion to expedite an appeal" – notify

opposing counsel and file "an affidavit setting out the nature of the emergency." Despite the fact

that all parties appeared before the Bankruptcy Court the day before their Motion was filed, the

Debtors did neither, thus eliminating the chance to work out a consensual briefing schedule and

leaving the record void of any evidentiary support for their naked assertions of irreparable harm.

Substantively, the rushed process proposed by the Debtors would prejudice the Trustees

and other Appellees, resulting in unfocused, incomplete, and duplicative briefing and immensely

more work for the Court. Billions of dollars are at stake in the Trustees' cases. A thoughtful,

measured presentation on appeal is warranted, so that the voluminous record (including

550 pages of trial transcripts, 200 pages of pre- and post-trial briefing, and thousands of pages of

exhibits) may be distilled into a concise summary of the pertinent facts and law. Truncating the

briefing schedule to seven days would make it impossible for the Appellees to coordinate their

briefs, eliminate overlapping arguments, or provide a more streamlined response to the Debtors'

"kitchen sink" approach (which includes several new theories first unveiled in the Motion itself).

Moreover, setting aside the suggestion that the mere entry (not enforcement) of a

judgment against non-debtor CEC could constitute irreparable harm, there is no expedited

schedule that would enable the Debtors to avoid that alleged injury. Specifically, as the

Bankruptcy Court observed the day before the Debtors filed the Motion, a reversal on appeal (no

matter how rapidly determined) would not result in the injunction the Debtors seek. Rather, "[i]f

the district court reverses, the proceeding will be remanded to this court to determine whether the

debtors satisfied the elements needed for injunctive relief. The debtors either will obtain an

injunction or they won't." Consequently, "no matter what appellate route is taken, a great deal

of litigation lies ahead." That is why the Bankruptcy Court concluded that certification of a

direct appeal to the Seventh Circuit "wouldn't materially advance a resolution of either the adversary proceeding or the bankruptcy case." 7/29 Tr. 8:19-9:6 (**Ex. B**).

In any event, the Debtors can move this appeal along expeditiously without prejudicing the Trustees and other Appellees in the process. Bankruptcy Rule 8018(a)(2) requires the Appellees to file their answering briefs within thirty days after the Debtors file their opening brief. Just as the Debtors had the choice to proceed to trial as early as March 30, the Debtors are free to file their opening brief at any time after the record is docketed and, as they volunteered to do in the Motion, to forgo a reply brief. As a result, if the Debtors truly desire a rapid process, this case can be fully briefed and ready for argument by mid-September, as follows:

- <u>August 13</u>: Appellees' designation of additional items for the record on appeal. *See* Bankruptcy Rule 8009(a)(2).

- <u>August 14</u>: Debtors' opening brief filed.

- <u>September 14</u>: Appellees' answering briefs filed. *See* Bankruptcy Rule 8018(a)(2). Case ready for argument.

- Argument to follow as permitted by the Court's calendar.

No further expedition is warranted.

## II.     BACKGROUND[2]

The Trustees are indenture trustees for an aggregate of $4.46 billion in second priority notes issued by Debtor-Appellant Caesars Entertainment Operating Company ("<u>CEOC</u>"). Op. at 7. CEOC's corporate parent, CEC, unconditionally guaranteed those notes. *Id.* at 7-8. Appellees Danner and MeehanCombs are holders of $119 million in unsecured notes issued by CEOC and also guaranteed by CEC. *Id.* at 6.

---

[2] There are a shocking number of false statements in the Motion. Where relevant to the Motion, they are noted below. Many others are irrelevant in this context and will be addressed in briefing on the merits.

In 2014, CEC disavowed its guarantee of all of that debt. *Id.* at 10-11. Consequently, in August 2014, WSFS filed an action in Delaware Chancery Court to establish and enforce CEC's guarantee. *Id.* at 11. Appellees Danner and MeehanCombs followed suit shortly thereafter, filing actions in the Southern District of New York in September and October 2014. *Id.* at 12. In March 2015, BOKF filed its own action against CEC, also in the Southern District of New York, asserting claims similar to those asserted in the other actions. *Id.* at 13.[3]

The WSFS, Danner and MeehanCombs cases were pending when CEOC and the other Debtors filed for bankruptcy in early January 2015. CEC did not file for bankruptcy itself, because doing so would expose it to hundreds of millions of dollars of tax liability and would wipe out the equity held by its existing shareholders. 6/4 Tr. 25:10-26:5, 27:6-9, 27:21-23 (Zelin) (**Ex. C**). Instead, non-debtor parent CEC directed the Debtors to file a proposed plan of reorganization on March 2 that, if confirmed, would forever release and enjoin all claims on CEC's guarantees, including those asserted in the pending non-bankruptcy actions. *Id.* at 16-17. Nine days later, again at the direction of CEC, the Debtors filed a complaint against the Appellees seeking to enjoin continued prosecution of their four pending actions through the effective date of that proposed plan. *Id.* at 18-19. If successful, this scheme would provide non-debtor CEC with all the benefits of a bankruptcy (a stay and discharge of creditor claims) but none of the burdens, such as oversight of the Bankruptcy Court and exposure to the absolute priority rule, which requires that creditors be paid before shareholders.

---

[3] In these actions, the Appellees are not trying to "jump to the front of the line" in the Debtors' bankruptcy case. Mot. at 1. The Appellees bargained for independent rights against CEC, and their claims are not subordinated or junior to other CEC creditors. The Appellees are not moving ahead of anybody by enforcing their contracts against a non-debtor entity that has chosen not to file for bankruptcy. *See Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998) (noting the "common case in which a creditor of a bankrupt files a claim against an insurer or guarantor of the bankrupt and is allowed to proceed").

The Bankruptcy Court held a status conference on March 25 and offered to start the trial on March 30. 3/25 Tr. 96:20-21 ("If you want urgent relief, I'll give you a trial starting Monday at 1:30.") (**Ex. D**). The Debtors declined, and ultimately agreed to a trial in early June, in part to "allow the debtors to prepare to present their evidence." *Id.* at 103:23-24. The Bankruptcy Court observed that the Debtors "sought what I thought was emergency relief. They're saying it's not that much of an emergency, so they're happy to have a trial date other than next week." *Id.* at 108:22-25.

The parties engaged in extensive discovery and pre-trial briefing over the next two months, and the Bankruptcy Court held a two-day trial on June 3 and 4. At the conclusion of trial, the Bankruptcy Court asked for post-trial briefs to be filed by June 26. On July 22, the Bankruptcy Court issued an Order and Opinion denying injunctive relief because, among other things, the facts did not warrant an injunction under the controlling Seventh Circuit decisions in *Fisher v. Apostolou*, 155 F.3d 876, 883 (7th Cir. 1998), and *In re Teknek, LLC*, 563 F.3d 639, 649 (7th Cir. 2009). *See* Op. at 19-33.

The Debtors subsequently filed a motion for certification of a direct appeal to the Seventh Circuit. The Bankruptcy Court denied that motion at a hearing on July 29, concluding that:

(1) There are "not one but two controlling decisions" of the Seventh Circuit (*Fisher* and *Teknek*).

(2) "The debtors' appeal raises questions about whether *Fisher* and *Teknek* apply to the facts of this case. But questions about whether particular court of appeals decisions apply to particular facts is a mixed question of law and fact, not a 'question of law' for purposes of the [certification] statute."

(3)  "[T]here are no conflicting decisions" contrary to the conclusions reached in the Opinion.

(4)  "[A] direct appeal will [not] materially advance anything" because, "[i]f the order is reversed, the proceeding will be remanded to this court to determine whether the debtors satisfied the elements needed for injunctive relief."  Hence, "no matter what appellate route is taken, a great deal of litigation lies ahead."

(5)  "[T]he debtor's motion for preliminary injunction does not involve a matter of public importance."

7/29 Tr. 6:15-10:14 (**Ex. B**).

The Debtors filed the Motion the next day without previously mentioning their desire for an expedited appeal to any of the Appellees, all of whom were in the Bankruptcy Court with the Debtors the previous day.  At the same time, the Debtors filed their designation of the record on appeal with the Bankruptcy Court.  Per Bankruptcy Rule 8009(a)(2), the Appellees' counter-designation of the record is due on August 13.  The clerk of the Bankruptcy Court has not yet transmitted the appellate record to the clerk of this Court pursuant to Bankruptcy Rule 8010(b).

## III.    THE MOTION SHOULD BE DENIED BECAUSE THE DEBTORS VIOLATED BANKRUPTCY RULE 8013

Bankruptcy Rule 8013 governs requests for "expedited action on a motion" in a bankruptcy appeal, including a "motion to expedite an appeal."  Fed. R. Bankr. P. 8013(a)(2)(B), (d).  To obtain such relief, "the movant must insert the word 'Emergency' before the title of the motion," include an affidavit that, among other things, "set[s] out the nature of the emergency" and, "[b]efore filing an emergency motion, make every practicable effort to notify opposing counsel."  *Id.* R. 8013(d)(1), (2), (3).  The Debtors did none of this.  They just filed a "motion,"

without a proper label, without an affidavit, and without notifying any of the Appellees (all of whom were in Bankruptcy Court with the Debtors the day before the Motion was filed).

In so doing, the Debtors consciously avoided the opportunity for a consensual briefing schedule. They also failed to support their claims of irreparable harm from a normal appellate process. Their failure to abide by Bankruptcy Rule 8013(d) is grounds for denial of the Motion. *See In re Pulliam*, No. 5:15-cv-00250-ODW, 2015 WL 3889448, *2 (C.D. Cal. June 23, 2015) (denying motion to advance hearing date because "Appellant failed to comply with these requirements" set forth in Rule 8013(d)); *In re Hall*, No. 10–4057, 2010 WL 2557334, *2-3 (D. Kan. June 24, 2010) (appellants' emergency motions "do not meet these requirements, so fail for procedural reasons") ("the procedural requirements have not been met, warranting denial of the motion"); *In re Zahn Farms*, 206 B.R. 643, 645 (BAP 2d Cir. 1997) (denying emergency motion where appellants "failed to comply" with the predecessor to Rule 8013(d)).

The Debtors' failure to follow the simple command of Rule 8013(d) proves the truism that haste makes waste or, in this case, expedition leads to sloppiness and inefficiency.

## IV.   AN EXPEDITED APPEAL WOULD PREJUDICE THE APPELLEES

Bankruptcy Rule 8018(a)(2) requires the Appellees to file their answering briefs "within 30 days after service of the appellant's brief." Fed. R. Bankr. P. 8018(a)(2). The Debtors ask the Court to cut that period by twenty-three days, affording the Trustees and other Appellees just seven days to respond to the Debtors' brief. That would be prejudicial and unwarranted.

The Bankruptcy Court emphatically rejected the Debtors' claim, made again in the Motion, that "[t]his appeal presents a pure question of law" that presumably could be addressed in straightforward legal briefing. Mot. at 7.[4] These are complicated cases involving billions of

---

[4]   As noted, the Bankruptcy Court also emphatically rejected the Debtors' claims, made again in the Motion, that the appeal is "of tremendous importance . . . to chapter 11 reorganizations

dollars. Discovery was extensive and the trial was lengthy and hotly-contested. In their briefs, the Appellees will need to summarize a voluminous record – including 550 pages of trial transcripts, 150 exhibits, and the Bankruptcy Court's 33-page Opinion – and brief issues that consumed 200 pages of pre- and post-trial briefing before the Bankruptcy Court. That cannot fairly be accomplished in seven days. Indeed, the Bankruptcy Court gave the parties twenty-three days for their post-trial briefs alone.

Given the time allotted by the Bankruptcy Rules, the Trustees will endeavor to coordinate with each other and with the other two Appellees to present an answering brief or briefs that are concise and not duplicative. Such coordination, requiring consultation among and review by at least seven different law firms representing the Appellees, would be impossible on the schedule requested by the Debtors. On the Debtors' schedule, it is likely that the Court would receive four separate answering briefs, each addressing similar facts, arguing similar law, with duplicative excerpts of the record. That, of course, would result in more work for the Court and, counterproductively, likely would delay an ultimate decision on appeal, rather than expedite one. It would be immensely prejudicial to the Trustees, who serve as representatives for holders of $4.46 billion in notes guaranteed by CEC.

The request to expedite is particularly inappropriate given that the purported "emergency" is entirely of the Debtors' own making. The Debtors delayed two months after

---

more broadly in the Northern District of Illinois and Seventh Circuit" and that the Opinion "is unsupported by Seventh Circuit law." Mot. at 7. The Bankruptcy Court certainly never "acknowledged" that the cases against non-debtor CEC "would have been stayed in most other courts." *Id.* at 2. The Trustees categorically dispute the Debtors' stilted and inaccurate description of the Bankruptcy Court's ruling and the law underlying it, and will demonstrate at the appropriate time that the Bankruptcy Court applied the Circuit's governing precedent faithfully, accurately and appropriately given the facts established at trial. The Debtors' distortion of the record illustrates the need for a measured process in which the actual facts and law may be presented to the Court.

filing for bankruptcy before deciding to seek an injunction. Then, after the Bankruptcy Court offered them the chance to litigate their injunction in March, they declined to do so. The Debtors cannot now be heard to complain about the prospect of a decision, more than four months later, in the actions pending against CEC.

The Debtors state that circumstances have changed because, after they filed their complaint, "certain Defendant-Appellees commenced a race to the courthouse to try to obtain judgments on their guaranty claims before the bankruptcy court could potentially enjoin them." Mot. at 5; *id.* at 1 ("some of [the] creditors-plaintiffs have tried to rush to judgment"). Nonsense. The Appellees were already in "the courthouse" before the Debtors decided to seek injunctive relief two months into their bankruptcy case. Indeed, three of them had filed cases against CEC months before the bankruptcy cases were filed.

Further, the "rush" about which the Debtors complain is the filing of a motion for summary judgment that was expressly authorized by Judge Scheindlin of the Southern District of New York and briefed on a fulsome schedule over the course of six weeks – hardly an attempt to beat the Bankruptcy Court to the punch. As Judge Scheindlin observed, "[w]hile the parties may be racing against a possible stay of this actions, this Court is not. . . . [T]he Bankruptcy Court will almost certainly be issuing its ruling prior to any ruling on the motions for partial summary judgment." Order dated June 19, 2015, at 5 n.5 (**Ex. E**). That is exactly what happened.

## V.     AN EXPEDITED APPEAL WOULD NOT BENEFIT THE APPELLANTS

While prejudicing the Trustees and other Appellees, the expedited schedule sought by the Debtors would do them no good. The Debtors say they want to avoid a determination of CEC's liability. "Absent prompt injunctive relief, a ruling on Defendant-Appellee's summary judgment motions is imminent." Mot. at 8. But BOKF's motion for summary judgment will be briefed

and ready for decision by August 7, well before briefing would be concluded even under the unreasonable schedule the Debtors propose.

More importantly, even if this Court issued a decision on appeal before CEC's liability is determined in the non-bankruptcy cases, and even if the Court reversed the Bankruptcy Court on all grounds, there still would be no injunction restraining continued prosecution of, and entry of judgments in, those non-bankruptcy cases. As the Bankruptcy Court observed, reversal would be followed by a remand "to determine whether the debtors satisfied the elements needed for injunctive relief." In other words, "a great deal of litigation lies ahead." 7/29 Tr. 8:19-9:6 (**Ex. B**). There will be no "prompt injunctive relief" no matter how expedited the appeal.

Finally, the Debtors fail to explain how a simple determination that their controlling parent corporation is liable on the contractual guarantees it voluntarily executed long ago possibly could derail their reorganization. As Judge Scheindlin recognized, "even the possible entry of judgment of liability[] would not be detrimental to the bankruptcy case. One reason this is true is that permitting a litigant to proceed to a judgment of liability is not the same thing as permitting that litigant to collect on a judgment." Order dated June 19, 2015, at 4 n.4 (**Ex. E**). In fact, CEC's liability on its guarantees must be determined before the bankruptcy case can proceed. The Bankruptcy Court must know the answer to that critical question if, as CEC has directed, the Debtors seek to confirm a plan that releases CEC from the guarantees. An expedited appeal with the objective of delaying such a determination would only postpone the day of reckoning and ultimately set the bankruptcy case back by months or years.

Further, adjudication of CEC's guarantee liability is just one of many issues that need to be resolved to move the bankruptcy case forward. The Debtors, for example, ignore the pending investigation and forthcoming report to be issued by an independent Examiner, who will advise

the Bankruptcy Court of potential causes of action the estate may have against CEC and its affiliates with respect to the admittedly "controversial" pre-bankruptcy transactions orchestrated by CEC. Regardless of what happens on appeal of the Debtors' requested injunction, the bankruptcy case is unlikely to progress towards confirmation until that investigation is complete. An expedited appeal will do nothing to advance or facilitate that process.

## VI.  CONCLUSION

If the Debtors truly desire a rapid process, they can expedite this appeal by filing their opening brief immediately and forgoing a reply brief, as they volunteered to do in the Motion. There is no basis, factually or legally, to prejudice the Trustees and other Appellees, and burden the Court in the process, by truncating the time in which answering briefs may be filed. The Trustees respectfully request that the Court enter an order denying the Motion.

Dated:  August 3, 2015

JONES DAY

By:   /s/ Timothy W. Hoffmann
Timothy W. Hoffmann
77 West Wacker Drive
Chicago, IL 60601

Bruce Bennett
James O. Johnston
Sidney P. Levinson
Joshua M. Mester
555 South Flower Street, 50th Floor
Los Angeles, CA  90071

-and-

KELLEY DRYE & WARREN LLP
Eric R. Wilson
David I. Zalman
101 Park Avenue
New York, NY  10178

*Attorneys for Appellee*
*Wilmington Savings Fund Society, FSB*

Respectfully submitted,

FOLEY & LARDNER LLP

By:   /s/ Mark F. Hebbeln
Mark F. Hebbeln
Harold L. Kaplan
Lars A. Peterson
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313

-and-

ARENT FOX LLP
Andrew I. Silfen
Mark B. Joachim
Michael S. Cryan
1675 Broadway
New York, NY 10019

Jackson D. Toof
1717 K Street, NW
Washington, DC  20006

*Attorneys for Appellee BOKF, N.A.*